IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **CANDICE HAGAN,**<br><br>*Plaintiff*,<br><br>v.<br><br>**TIMOTHY C. WARD, SUE MICKENS, and GEORGIA DEPARTMENT OF CORRECTIONS,**<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:22-cv-00107-TES** |

**ORDER GRANTING JUDGMENT ON THE PLEADINGS**

Plaintiff Candice Hagan originally filed this action in the Superior Court of Pulaski County, Georgia, seeking damages for injuries she sustained as a prisoner in the custody of the Georgia Department of Corrections (the "GDC"). *See* [Doc. 1]. Commissioner Timothy C. Ward, Warden Sue Mickens, and the GDC (collectively, "Defendants") removed the action to this Court. [*Id.*]. Now, Defendants have moved for judgment on the pleadings based on the Eleventh Amendment, sovereign immunity, qualified immunity, and various other grounds. *See* [Doc. 3]. For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings [Doc. 3].

**FACTUAL BACKGROUND**

The Court takes the following facts from Plaintiff's Complaint. Unless otherwise noted, the Court assumes these facts to be true for the purpose of ruling on the pending

Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

On February 5, 2020, Plaintiff was a prisoner in the custody of the GDC at Pulaski State Women's Prison. [Doc. 1-1, ¶ 14]. As a condition of her incarceration, Plaintiff attended meetings at the Residential Substance Abuse/Use Treatment Center (the "RSAT Center") in Cochran, Georgia. [*Id.*]. While walking through a common area (presumably, either at the prison or RSAT Center), she stepped in liquid left on the floor, slipped, and fell. [*Id.* at ¶ 15]. Plaintiff attempted to limit the impact from the fall by reaching out her right hand, but this act caused injuries to her right shoulder, forearm, and wrist. [*Id.* at ¶ 16]. Prisoners nearby helped Plaintiff to her feet. [*Id.* at ¶ 17]. Because Plaintiff complained about pain from the fall, a correctional officer placed her in a wheelchair and took her to the onsite nurse's station for an examination. [*Id.* at ¶ 18]. Following this examination, prison personnel transported Plaintiff to a local emergency room for treatment. [*Id.*]. A physician examined Plaintiff and concluded that she had sustained a severe fracture to her forearm and wrist that required immediate surgery. [*Id.* at ¶ 19]. Due to limited resources, the emergency room transferred Plaintiff to the Coliseum Medical Center ("Coliseum") in Macon, Georgia, for further treatment and surgery. [*Id.*].

At Coliseum, an on-call orthopedic surgeon examined Plaintiff and confirmed that she had suffered a severe fracture to her right forearm and wrist that required immediate surgery. [*Id.* at ¶ 20]. However, the correctional officer escorting Plaintiff to

2

these various medical facilities informed her that she needed to return to the RSAT Center. [*Id.* at ¶ 21]. The orthopedic surgeon instructed Plaintiff and the correctional officer to be at Coliseum the following morning for surgery. [*Id.*]. They both returned to the RSAT Center. [*Id.*].

The following morning, Plaintiff awoke to severe pain and swelling in her right forearm and wrist. [*Id.* at ¶ 22]. She requested a nurse provide her with prescription medicine and return her to Coliseum for the scheduled surgery. [*Id.*]. In turn, Defendants informed Plaintiff that she would not be receiving medication or leaving for surgery. [*Id.*]. From February 6, 2020, to February 12, 2020, Plaintiff repeatedly requested her prescription medicine and to be transported to Coliseum for surgery; Defendants denied these requests. [*Id.*].

On February 12, 2020, Plaintiff complained once again about severe pain, and she was taken to Dr. Rosenbaum in Eastman, Georgia, for treatment. [*Id.* at ¶ 24]. Dr. Rosenbaum examined Plaintiff and noticed severe swelling and deformities in her right forearm and wrist. [*Id.* at ¶ 25]. She was immediately taken into surgery. [*Id.*]. Despite this surgery, Plaintiff still suffered extensive injury to her forearm and wrist, including paresthesia and the loss of use of her right hand. [*Id.* at ¶ 26].

Plaintiff alleges that had she received the surgery at Coliseum, she wouldn't have suffered such extensive injury and pain. [*Id.* at ¶ 27]. She alleges that the delay in

treatment caused her to suffer more extensive injuries to her forearm and wrist, including permanent loss of feeling, numbness, and dexterity. [*Id.* at ¶ 28].

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). "A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss." *Provident Mut. Life Ins. Co. of Phila. v. City of Atlanta*, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).[1]

When ruling on a 12(b)(6) motion, the Court must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 572. A complaint survives a motion to dismiss only if the plaintiff alleges sufficient factual matter to state a claim for relief that is plausible on its face, and she must state more than "unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint

---

[1] Given this standard, the Court will rely on and refer to cases decided under Rule 12(b)(6) as well as Rule 12(c).

"may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a

legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

## DISCUSSION

Plaintiff brings this 42 U.S.C. § 1983 action for monetary damages against all Defendants for alleged (and somewhat amorphous) violations of her Fifth, Eighth and Fourteenth Amendment rights. Relatedly, she also asserts a vague and nonspecific state law negligence claim against Defendants. In general, Plaintiff claims that Defendants were deliberately indifferent to her serious medical need by denying her access to medical personnel qualified to treat her injuries and interfering with the administration of prescription medication. *See* [Doc. 1-1, ¶ 32 (listing six ways in which Defendants were deliberately indifferent to Plaintiff's serious medical need)].

However, as evidenced in the presentation of the facts, the allegations supporting these claims fail to specify which of the three Defendants are responsible for each alleged act or omission.[2] *See Wells v. Royal Caribbean Int'l Cruises Ltd.*, No. 20-13378,

---

[2] While Defendants note that Plaintiff's Complaint has characteristics of a "typical shotgun pleading[,]" they never argue that the Court should dismiss her Complaint on this ground. [Doc. 3-1, p. 1]. And, because it clearly appears that Defendants have notice of the claims asserted against them and the grounds upon which such claims rest, the Court does not find it necessary to go down that path. Instead, the Court accepts Plaintiff's allegations as true, dismisses all legal conclusions and unwarranted deductions of fact, and issues a ruling on the merits.

2021 WL 3047173, at *1 (11th Cir. July 20, 2021). Rather, Plaintiff makes general and conclusory statements that all named Defendants (in addition to "their agents, employees, and/or representatives") acted negligently and in violation of her constitutional rights. *See, e.g.,* [Doc. 1-1, ¶¶ 31–33]. Plaintiff's failure to attribute any specific action or inaction to the individually named Defendants (Commissioner Ward and Warden Mickens) prove fatal to her claims. However, these pleading deficiencies aren't the only reason Plaintiff loses. And, the Court addresses them all below.

    A.    <u>§ 1983 Claims Against the GDC</u>

Plaintiff alleges that she suffered serious injuries to her right shoulder, foreman, and wrist while in the custody of the GDC. She asserts that GDC representatives failed to act in accordance with GDC policies and procedures to ensure that Plaintiff received timely access to appropriate medical facilities and treatment. She asserts violations of her constitutional rights pursuant to § 1983 against the GDC itself. In response, Defendants argue that all federal constitutional claims asserted against the GDC are barred by the Eleventh Amendment, the doctrine of sovereign immunity, and the text of § 1983. [Doc. 3-1, pp. 4–5].

    1.    **Immunities**

As to Defendants' first argument, Plaintiff counters by asserting that the GDC waived any applicable immunities by removing this action from the Superior Court of Pulaski County (a state court) to this Court (a federal court). *See* [Doc. 9, p. 7]. In

support of her argument, Plaintiff cites to *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002), and *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013). However, upon thorough review, the Court concludes that Plaintiff's reliance on these two cases is wholly misplaced.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. Const. amend. XI. Appropriately then, the law is quite clear that "an unconsenting [s]tate is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted). However, this immunity is not absolute. In the cited *Lapides* case, the Supreme Court held that "[a] [s]tate's action joining the removing of this case to federal court waived its Eleventh Amendment immunity." 535 U.S. at 624. In reaching its holding, the Supreme Court reasoned that "[w]here a state *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.* at 619 (quoting *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906)).

Plaintiff apparently rests her argument that the GDC waived any Eleventh Amendment immunity on this reasoning. While the reasoning stated above may

8

suggest such a broad holding—that any time a state removes a case to federal court, the state has waived its immunity—the Eleventh Circuit, in discussing the *Lapides's* holding, very clearly concluded that it does not.

In *Stroud*, the Eleventh Circuit discussed *Lapides's* holding as it relates to a state's immunity from suit in a federal forum and distinguished it from a state's immunity from liability.

> So, under *Lapides's* reasoning, a state waives its immunity from a federal forum when it removes a case, which voluntarily invokes the jurisdiction of that federal forum. But nothing in *Lapides* suggests that a state waives any defense it would have enjoyed in state court—including immunity from liability for particular claims. *Lapides* specifies that it is addressing only immunity to a federal forum . . . In fact, the opinion distinguishes this immunity against federal court proceedings from a state's "underlying sovereign immunity" . . . implying that its discussion of immunity from federal court does not address other aspects of sovereign immunity, including a state's immunity from liability.

*Id.* at 1302 (citations omitted). To illustrate the distinction here, it has long been settled that "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Sovereign immunity is a "divisible concept" from Eleventh Amendment immunity. *Stroud*, 722 F.3d at 1301. As a result, "a state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts." *Id.*

This is exactly what the GDC has chosen to do in this action. By invoking this federal forum, the GDC waived its Eleventh Amendment immunity from suit in federal court. However, "this removal did not affect [the GDC's] immunity from liability for monetary damages." *Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019); *see also Hardy v. Ga. Dep't of Corrs.*, No. CV-117-172, 2019 WL 4670758, at *4 (S.D. Ga. Sept. 24, 2019). Plaintiff's assertion that the GDC waived its immunity from liability by removing this action to federal court is easily and soundly rejected. Accordingly, the Court finds Plaintiff's § 1983 claims against the GDC to be improperly brought. But, this isn't the only reason Plaintiff's claims against the GDC fail. The Court explains below.

### 2.     The Text of § 1983

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983. Defendants argue that the GDC is not a "person" subject to suit under § 1983. [Doc. 3-1, p. 5]. And the controlling law on the matter clearly supports their position. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *see also Zellars v. Clarke Cnty. Sheriff's Dep't.*, No. 3:08-CV-91 (CDL), 2008 WL 5076334, at *1 (M.D. Ga. Nov. 25, 2008) ("Because the Georgia Department of Corrections is an agency of the state, it is not a 'person' that may be sued under § 1983."); *Darrough v. Allen*, No. 1:13-cv-57 WLS,

10

2013 WL 5902792, at *3 (M.D. Ga. Oct. 8, 2013). In response, Plaintiff doesn't really dispute this authority. Instead, she rather boldly argues that "[t]imes they are a changin" and "the GDC *should* be deemed a 'person'. . . allowing it to be subject to exposure under § 1983 as any other 'person'." [Doc. 9, p. 9 (emphasis added)].

Effectively, Plaintiff asks the Court to ignore controlling precedent because it doesn't suit her position. The Court will do no such thing. There is nothing more for the Court to consider here so long as this precedent stands in the Eleventh Circuit. Only a circuit court can overturn its binding precedent. Until then, the Court will follow this and all other binding precedent. Since the Eleventh Circuit doesn't consider GDC to be a "person" under §1983, the Court finds that Plaintiff's § 1983 claims against the GDC are barred.

### B.  § 1983 Claims Against Commissioner Ward and Warden Mickens

As noted earlier, it's difficult for the Court to understand the purported basis for any liability in this action as to Commissioner Ward and Warden Mickens. Plaintiff fails to attribute any specific action or inaction to either Defendant. Rather, Plaintiff just generally alleges that *all* Defendants were deliberately indifferent to her serious medical need. In fact, she never mentions either individual Defendant by name other than to state the position each one holds within the GDC hierarchy. *See* [Doc. 1-1, pp. 2–3]. She only alleges that after she slipped and fell, "Defendants" denied her access to necessary

11

medical care which delayed her treatment and caused her unnecessary pain and suffering.

To bring a claim for deliberate indifference to a serious medical need, a party must allege facts to show that she had a medical need that was objectively serious and that the defendant was deliberately indifferent to that need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended. *Farrow*, 40 F.3d at 1243.

In the context of a prisoner claim, a correctional officer acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). That is, the prisoner must not only show an objectively serious medical need, but she must also show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*,

12

654 F.3d 1171, 1176 (11th Cir. 2011). A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Id.* Finally, "[a]n Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment." *Id.* (citing *Young v. City of Augusta*, 59 F.3d 1160, 1169 n.17 (11th Cir. 1995)).

Here, Plaintiff has certainly alleged facts showing that she had a serious medical need insofar as she sustained a fall that resulted in a fracture to her right forearm and wrist that required immediate surgery, which she did not timely receive. *See Granda v. Schulman*, 372 F. App'x 79, 83 (11th Cir. 2010) ("[A]llegations of a delay in medical care for 'serious and painful injuries' . . . can state a claim for a violation of the Eighth Amendment, especially were delay in treating a 'known or obvious' serious medical condition is unexplained."). Plaintiff has not, however, alleged facts showing that the two remaining Defendants—Commissioner Ward or Warden Mickens—knew about her serious medical need and then effectively ignored it. Again, Plaintiff failed to make any <u>specific</u> allegations linking the named Defendants to her claims. "[S]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (citations omitted).

Here, Plaintiff doesn't offer any facts to show that Commissioner Ward or Warden Mickens knew that Plaintiff suffered a fall that necessitated medical attention,

13

and then armed with such knowledge, denied her necessary medical care or attention. At most, Plaintiff alleges that she asked an unnamed nurse (importantly—not Commissioner Ward or Warden Mickens) to provide her prescription medication, and this nurse then informed her that "Defendants" wouldn't allow her to have it. *See* [Doc. 1-1, ¶ 23]. This vague allegation hardly attributes any specific and/or actionable wrongdoing to Commissioner Ward or Warden Mickens.

A district court properly dismisses a defendant when a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that connect the defendant with the alleged constitutional violation. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing *Pamel Corp. v. P.R. Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980)). Nowhere in her Complaint does Plaintiff allege facts to show that she ever interacted with Commissioner Ward or Warden Mickens during the relevant time period.

Plaintiff, perhaps aware of this failure, attempts to base her § 1983 claims against Commissioner Ward and Warden Mickens on a supervisory liability theory. She alleges that "Defendants are liable for the actions or inactions of its employees, agents and/or representations who breached a ministerial duty under [r]espondeat [s]uperior." [Doc. 1-1, ¶ 12]. But, well-settled Eleventh Circuit precedent unequivocally holds that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See, e.g., Cottone*

*v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Rather, supervisors can only be held liable under § 1983 if they personally participated in unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). As to the question of personal participation, Plaintiff has not alleged that either Commissioner Ward or Warden Mickens participated in any decision relating to her medical treatment, such as the administration of her prescription medication or transportation arrangements for surgery.

> As to the question of a causal connection, one can be established if
>
> a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* Plaintiff has not alleged any facts suggesting that a history of widespread abuse would have put Commissioner Ward or Warden Mickens on notice of a need to correct the alleged constitutional deprivation in this action; nor has Plaintiff alleged that either individual had an improper custom or policy concerning inmate medical care or that they directed their subordinates to act unlawfully (or knew they would do so and failed to stop them). And, Plaintiff has failed

simply lumps all federal and state law claims together under the heading, "Negligence and Violations." She also fails to cite any applicable Georgia statute or discuss the elements of a state law negligence claim.

While the Court could discuss such pleading deficiencies in detail, it ultimately concludes that Plaintiff's state law claims for negligence against Commissioner Ward and Warden Mickens fail for those same reasons that her federal claims against them fail. Once again, Plaintiff fails to attribute any specific inaction to the individually named Defendants. She doesn't identify how any specific Defendant breached any duty in connection with her medical care and/or treatment. Rather, her argument consists of mere conclusory allegations that "Defendants" acted negligently. *See* [Doc. 1-1, ¶¶ 33–35]. As such, the Court concludes that Plaintiff has failed to sufficiently allege that either Commissioner Ward or Warden Mickens acted negligently regarding her care and/or treatment while in the custody of the GDC.

That being said, Plaintiff's lack of specificity is not the only reason why her state law claims for negligence fail. Her claims are also barred by the Georgia Tort Claims Act (the "GTCA"). The GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee." O.C.G.A. § 50-21-25(a). Under its provisions, "[a] state officer or employee who commits a tort while acting with the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a); *see Howard v. Miller*, 476 S.E.2d 636 (Ga. Ct. App. 1996); *see Riddle v. Ashe*, 495

S.E.2d 287 (Ga. 2005) (finding that immunity applies "even when the officer is accused of committing unauthorized torts that are intentional or malicious[]"). Rather, "any liability rests not with state employees in their individual capacities but rather with the 'state government entity for which the state officer or employee was acting.'" *Shekhawat v. Jones*, 746 S.E.2d 89 (Ga. Ct. App. 2013) (quoting O.C.G.A. § 50-21-25(b)); *see Davis v. Standifer*, 621 S.E.2d 852 (Ga. Ct. App. 2005).

The first question in this analysis is whether Commissioner Ward or Warden Mickens acted within the scope of their employment at the relevant times. Although Plaintiff fails to allege any facts showing that Commissioner Ward and Warden Mickens were personally involved in her medical care, the Court gives Plaintiff the benefit of the doubt and assumes that their liability stems from an alleged failure to ensure that she received adequate medical treatment during her incarceration. Thus, her state law tort claims are necessarily based on an incident that occurred while the two were acting within the scope of their employment. Pursuant to the GTCA, these Defendants, as individual state employees, can't be liable for these claims. Rather, the GTCA provides that should a plaintiff name an individual state officer or employee as the party defendant, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant." O.C.G.A. § 50-21-25(b). Therefore, Commissioner Ward and Warden Mickens are immune from suit, and the GDC must be substituted as the real party defendant here.

However, substituting the GDC for the individually named Defendants in this action cannot save Plaintiff's state law negligence claims. While the GTCA waives sovereign immunity in same cases, there are specific exceptions to this waiver. One of those exceptions is the "so-called discretionary function exception." *Brantley v. Dep't of Hum. Res.*, 523 S.E.2d 571, 573 (Ga. 1999). Under this exception, "the state shall have no liability for losses resulting from . . . [t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the party of a state officer or employee, whether or no the discretion involved is abused[.]" O.C.G.A. § 50-21-24(2). In 1991, the Georgia General Assembly amended the GTCA to define "discretionary function or duty" as "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors." O.C.G.A. § 50-21-22(2). Prior to this amendment, Georgia courts analyzed potential tort liability of state defendants by distinguishing between "ministerial" and "discretionary" acts. However, since the GTCA's enactment, this analysis became irrelevant to the question of state liability. *See, e.g., Edwards v. Dep't of Child. & Youth Servs.*, 525 S.E.2d 83 (Ga. 2000) (stating that "prior case law that distinguished between the 'discretionary' and 'ministerial' acts of state employees as the basis for state liability[]" is no longer the appropriate analysis); *Brantley*, 523 S.E.2d at 573.

However, it appears that Plaintiff missed this change. She argues that her claims against Commissioner Ward and Warden Mickens are not barred by any applicable immunities because they are based on their negligent performance of some undefined ministerial duties. However, in support of this argument, Plaintiff cites to cases involving *county* officers and/or employees. [Doc. 9, p. 14]. The distinction between "ministerial" and "discretionary" acts remains relevant in cases involving tort liability of local governmental entities, such as counties. However, such an analysis is not relevant when the issue is state liability under the GTCA. A state's liability for tort causes of action is determined solely by reference to the language of the GTCA and its statutory exceptions. As such, the Court concludes that the GTCA excludes from its waiver of sovereign and official immunity any losses resulting from such discretionary functions as described in the complaint. Accordingly, Plaintiff's state law negligence claims are barred by sovereign immunity.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings [Doc. 3].

**SO ORDERED**, this 23rd day of May, 2022.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**